Approved: *Aline Flodr* (signature)
ALINE R. FLODR
Assistant United States Attorney

Before: THE HONORABLE DEBRA FREEMAN
United States Magistrate Judge
Southern District of New York

**19MAG 5020**

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

- v. -

JUAN RIVAS-MARICHAL,
a/k/a "Isaac,"

      Defendant.

- - - - - - - - - - - - - - - - - - x

**COMPLAINT**

Violations of 21 U.S.C.
§§ 841(a)(1), 841
(b)(1)(B), 846; 18
U.S.C. § 2

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

  PETER SURETTE, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA"), and charges as follows:

### COUNT ONE
### (Narcotics Conspiracy)

  1. From at least in or about September 2018, up to and including in or about December 2018, in the Southern District of New York and elsewhere, JUAN RIVAS-MARICHAL, a/k/a "Isaac," the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

  2. It was a part and an object of the conspiracy that JUAN RIVAS-MARICHAL, a/k/a "Isaac," the defendant, and others known and unknown, would and did distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

  3. The controlled substances that JUAN RIVAS-MARICHAL, a/k/a "Isaac," the defendant, conspired to distribute and possess

with intent to distribute were forty grams and more of mixtures and substances containing a detectable amount of heroin and fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Section 846.)

## COUNT TWO
### (Narcotics Distribution)

4. On or about November 6, 2018, in the Southern District of New York and elsewhere, JUAN RIVAS-MARICHAL, a/k/a "Isaac," the defendant, intentionally and knowingly distributed and possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

5. The controlled substance involved in the offense was forty grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B); and Title 18, United States Code, Section 2.)

## COUNT THREE
### (Narcotics Distribution)

6. On or about March 13, 2019, in the Southern District of New York and elsewhere, JUAN RIVAS-MARICHAL, a/k/a "Isaac," the defendant, intentionally and knowingly distributed and possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

7. The controlled substance involved in the offense was forty grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B); and Title 18, United States Code, Section 2.)

## COUNT FOUR
### (Narcotics Distribution)

8. On or about March 19, 2019, in the Southern District of New York and elsewhere, JUAN RIVAS-MARICHAL, a/k/a "Isaac," the defendant, intentionally and knowingly distributed and possessed

with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

9. The controlled substance involved in the offense was mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C); and Title 18, United States Code, Section 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

10. I am a Special Agent with the DEA assigned to the New York OCDETF Strike Force (the "Investigative Agency"). This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents, witnesses and others, as well as my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

11. Based on my conversations with a confidential source working with the Investigative Agency ("CS-1"[1]), my conversations with other law enforcement agents, physical surveillance that I conducted, my review of recorded conversations, my review of law enforcement reports, and my review of records obtained from law enforcement databases, I have learned the following, in substance and in part:

    a. On or about October 24, 2018, at the direction of the Investigative Agency, CS-1 called an individual who has been identified as a co-conspirator not named herein ("CC-1") to discuss a potential narcotics transaction. During the call, which

---

[1] CS-1 has been an informant with the Investigative Agency since 2017 and is working to receive benefits related to narcotics-related criminal charges that the Investigative Agency could bring related to CS-1's activities from in or about January 2016 to in or about July 2017. CS-1's information has been deemed reliable and has been corroborated by independent evidence, including as referenced herein.

was recorded, CC-1 told CS-1 to call him when CS-1 was ready to purchase narcotics.

b. On or about October 29, 2018, CC-1 called CS-1, which call was recorded, and told CS-1 that he had fentanyl available for sale. CC-1 explained that he would first sell CS-1 a sample. CC-1 stated that the fentanyl was "A-1" quality and that CC-1 had tested the quality of the fentanyl. CS-1 told CC-1 that CS-1 was interested in purchasing fifty grams of fentanyl from CC-1 and would contact CC-1 when CS-1 was ready to make the purchase.

c. On or about November 5, 2018, CS-1 called CC-1 to arrange the purchase of the fifty grams of fentanyl. During the call, which was recorded, CC-1 agreed to meet CS-1 the following day to conduct the narcotics transaction.

d. On or about the following day, November 6, 2018, CS-1 contacted CC-1, who instructed CS-1 to meet him near Yonkers, New York. Later that day, CS-1 went to an address in Yonkers ("Location-1") that CC-1 had provided to CS-1 via text message. When CS-1 arrived at Location-1, CS-1 contacted CC-1 by phone, and CC-1 instructed CS-1 to contact a certain phone number ("Phone Number-1"), which CC-1 indicated belonged to his cousin who was waiting for CS-1 inside a car ("Vehicle-1") parked in the vicinity of Location-1. CC-1 further instructed CS-1 to meet with his cousin to complete the narcotics transaction. CS-1 then contacted the individual using Phone Number-1, who was subsequently identified as JUAN RIVAS-MARICHAL, a/k/a "Isaac," the defendant, as described herein. During that recorded call, RIVAS-MARICHAL told CS-1 that RIVAS-MARICHAL was in Vehicle-1 down the block from Location-1. CS-1 then walked to Vehicle-1 and entered the vehicle. Inside Vehicle-1, CS-1 paid approximately $3,250 to RIVAS-MARICHAL, and RIVAS-MARICHAL gave CS-1 a substance that I know, based on my review of DEA lab reports, later tested positive for the presence of fentanyl and heroin and was found to weigh approximately 48.8 grams. The above-described transaction on November 6, 2018 was audio-recorded.

e. On or about January 16, 2019, RIVAS-MARICHAL contacted CS-1 via text message. During their text message conversation, RIVAS-MARICHAL stated he was ready to conduct further narcotics transactions with CS-1.

f. On or about March 12, 2019, CS-1 made a recorded call to RIVAS-MARICHAL. During that call, CS-1 told RIVAS-MARICHAL that CS-1 wanted to purchase forty grams of heroin for $2,500 and RIVAS-MARICHAL agreed.

4

g. On or about the following day, March 13, 2019, CS-1 contacted RIVAS-MARICHAL and discussed where they could meet in order for CS-1 to purchase forty grams of heroin. RIVAS-MARICHAL said he would text CS-1 a location for the meeting. Later that day, CS-1 went to an address in Yonkers ("Location-2") that RIVAS-MARICHAL had provided to CS-1 via text message, which was near Location-1. When CS-1 arrived at Location-2, CS-1 contacted RIVAS-MARICHAL by phone, and RIVAS-MARICHAL told CS-1 that he was on his way to Location-2. Shortly thereafter, law enforcement agents observed RIVAS-MARICHAL driving Vehicle-1 to Location-2.

h. After RIVAS-MARICHAL arrived at Location-2, RIVAS-MARICHAL (driving Vehicle-1) and CS-1 (driving CS-1's vehicle) drove together to another location in Yonkers ("Location-3"). When RIVAS-MARICHAL and CS-1 arrived at Location-3, CS-1 left CS-1's vehicle and entered Vehicle-1. Inside Vehicle-1, CS-1 exchanged approximately $2,500 with RIVAS-MARICHAL for a substance that I know, based on my review of DEA lab reports, later tested positive for the presence of heroin, fentanyl, and acetyl fentanyl (an analogue of fentanyl), among other substances, and was found to weigh approximately 40.4 grams. RIVAS-MARICHAL told CS-1 that RIVAS-MARICHAL wanted to make CS-1 a business partner and offered to provide at least ten "bundles"[2] of heroin to CS-1 from a new supplier as a sample as early as the following week. RIVAS-MARICHAL explained to CS-1 that RIVAS-MARICHAL's product was "top shelf" and was "killing people." RIVAS-MARICHAL further informed CS-1 that RIVAS-MARICHAL was willing to add fentanyl to his product in order to beat out his competition. The above-described transaction on March 13, 2019 was audio-recorded.

i. On or about March 17, 2019, RIVAS-MARICHAL contacted CS-1 via text message. During their text message conversation, RIVAS-MARICHAL stated he had the sample ready for CS-1 to pick up, which CS-1 understood to mean the ten bundles of heroin (the "Sample") that RIVAS-MARICHAL had referred to during their previous meeting, see supra ¶ 11.h. On or about March 18, 2019, CS-1 replied to RIVAS-MARICHAL that CS-1 would meet with RIVAS-MARICHAL the following day to pick up the Sample.

j. On or about the following day, March 19, 2019, CS-1 engaged in a text message conversation with RIVAS-MARICHAL, during which they discussed meeting in Yonkers for CS-1 to pick up the Sample. Later that day, CS-1 met with RIVAS-MARICHAL inside of the vehicle that RIVAS-MARICHAL was driving (which was not

---

[2] Based on my training and experience, I know that a "bundle" generally consists of ten glassines of heroin.

5

Vehicle-1). During their meeting, RIVAS-MARICHAL handed CS-1 the Sample, which was in a clear plastic ziplock bag. RIVAS-MARICHAL told CS-1 that the Sample contained eleven to twelve bundles of heroin. I know, based on my review of DEA lab reports, that the Sample later tested positive for the presence of heroin, fentanyl, and acetyl fentanyl, among other substances, and was found to weigh approximately 1.995 grams. The above-described transaction on March 19, 2019 was audio-recorded.

12. On or about November 6, 2018, CS-1 was shown a photograph from a law enforcement database of an individual who had received a summons in connection with Vehicle-1. CS-1 identified the individual as JUAN RIVAS-MARICHAL, a/k/a "Isaac," the defendant, and the person who handed narcotics to CS-1 on or about November 6, 2018.

13. Based on my conversations with a law enforcement agent ("Agent-1") who participated in surveillance during this investigation, and who compared visual surveillance on or about March 13, 2019, of the male who was driving Vehicle-1, see supra ¶ 11.h., and a photograph from a law enforcement database of JUAN RIVAS-MARICHAL, a/k/a "Isaac," the defendant, I am aware that Agent-1 believes the individuals are the same person.

WHEREFORE, deponent respectfully requests that JUAN RIVAS-MARICHAL, a/k/a "Isaac," the defendant, be imprisoned, or bailed, as the case may be.

Peter Surette
Special Agent
Drug Enforcement Administration

Sworn to before me this
23rd day of May, 2019

THE HONORABLE DEBRA FREEMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

6